## ROGERS *v.* SMITH.

A feme covert, in regard to her separate estate, has no right of disposition beyond that given by the instrument creating the estate.

Equity will not interfere to reform such a deed, upon an allegation of mistake, except upon the clearest and most overwhelming proof.

If, under such a deed, rights are secured to minor children, a bill in Chancery cannot be safely taken *pro confesso* against them, nor a decree made upon an answer in form by a guardian *ad litem*. A decree upon such an answer, or on a bill taken *pro confesso*, would not bind the infant.

Nor in such a case, would an act of Assembly authorizing the feme covert to sell, and a sale under such act, convey an indefeasible title.

In the devise of *a house* in a will, the word *house* is synonymous with *messuage*, and conveys all that comes within the curtelage.

ERROR to the District Court of Alleghany county.

*Sept.* 25. This was an amicable action of covenant, in which Mahlon Rogers was plaintiff, and Jonathan H. Smith defendant. The facts under which the parties resorted to this action are the following. Thomas Robinson, of the city of Pittsburgh, in his last will and testament, made, *inter alia*, the following devise: "I give and bequeath to my daughter Jane, the house that I now occupy, in Third street," &c. After the death of the devisor, the devisee, Jane Robinson, being seised of the house and lot, under the will of her deceased father, in contemplation of marriage, and a few days previously thereto, with the knowledge and assent of her intended husband, Jonathan H. Smith the defendant, executed a deed, by which she conveyed the said house and lot to a certain Charles Avery, his heirs, &c., in trust, "that the same shall be and remain for the sole and separate use of the said Jane Robinson, subject only to the just and reasonable expenses of the trust, and without being subject to the control, appropriation, assignment, or interference of any future husband of the said Jane Robinson, or of his creditors during her natural life, and in the event of her death, that the said Charles Avery shall grant, bargain, sell, and convey the same, to the heirs at law of the said Jane Robinson, then being in existence, unless the said Jane Robinson shall, during her lifetime, have made an appointment or testamentary disposition in writing, of all or any of said property, in which case the said trustees shall convey the same pursuant to the testamentary disposition aforesaid."

After her marriage, and the birth of four children, then all living, the said Smith and wife filed a bill in Chancery, in the District Court of Alleghany county, against the trustee, and the said

minor children, in which they alleged upon oath, that the said deed was executed by mistake and under imposition, contrary to her intention, &c., that the property was rendered unproductive by fire, &c., and praying that the deed might be reformed and made according to her intention, and that her appointing power might be enlarged into a general power, omitting the word "testamentary." The subpœna issued under this bill was not served personally on the minor children, they not being within the jurisdiction of said court. But, on the same day, viz., January 7th, 1846, on which the subpœna issued, the court, at the instance of the complainants, appointed Thomas G. Robinson *guardian ad litem*, who accepted the service of the subpœna, which was also served on the trustee. On the 31st of January, 1846, Thomas G. Robinson, the *guardian ad litem*, filed his answer. On the 11th of April, 1846, by leave of the court, the trustee withdrew his appearance, and the guardian *ad litem* his appearance and answer. Whereupon, on the same day, the bill was taken *pro confesso*, and the court reformed the deed of trust in conformity with the prayers of the complainants.

At the session of the Legislature in 1846, the following act, entitled "An act to authorize J. H. Smith and wife to sell certain real estate in the county of Alleghany," was procured:

"Whereas, Jane Smith, wife of Jonathan H. Smith, Esq., late of Pittsburgh, when about to enter into the marriage contract with said Jonathan in 1838, executed a deed of trust, for the purpose of giving her estate, real and personal, to said trust for *the* (her) sole and separate use, and with a general (power of) appointment, as she then supposed;

"And, whereas the language of said deed as to the power of appointment is somewhat ambiguous, and may be construed so as to restrict her power of disposing of the same to a testamentary disposition, contrary to her wish and intention when said deed was executed, and contrary to the understanding with her intended husband upon their intended marriage; therefore,

"Be it enacted, &c., that the said Jane shall have power of disposing of her said estate so limited, by any instrument in writing, signed and sealed, and acknowledged for such estate or estates, and upon such uses and trust as she, the said Jane, may deem advisable."

Under the deed of trust, as reformed by the court, and the act of Assembly, Jonathan H. Smith and Jane, his wife, formerly Jane Robinson, sold and conveyed to Mahlon Rogers, the plaintiff, by deed of grant, bargain, and sale, dated the 13th day of August, 1846, the trust property, being lot No. 301, for the consideration of $401,

which was paid. In this deed, Smith and wife covenanted, that they "had a good and sufficient right to sell and convey the premises in fee to said Rogers." On this covenant, the amicable action in this case was entered, to determine whether the title of Rogers, the plaintiff, to the property conveyed, was good and indefeasible, under the facts and circumstances of the case. It appeared, by the paper-book, that the parties on a case stated for the opinion of the court below, agreed as follows :

If Smith, the defendant, has made a good title to said Rogers by said conveyance, or if his wife can make a good conveyance by her appointment and power to her trustee, &c., judgment is to be entered for defendant. But if said Smith and wife have no good right to convey, then the judgment is to be entered for plaintiff for $401. If the judgment is for the defendant, and the court should be of opinion, that to make a good title it is necessary to make a conveyance through the trustee, no proceeding is to be had upon a bond given by said Rogers to said Smith, for $300 of the purchase money, until the said trustee shall make a deed to said Rogers; and if judgment is entered for plaintiff, he is only to enforce thereby the repayment of the money paid to said Smith, being $100.

The court entered judgment for the defendant; whereupon the plaintiff sued out this writ of error, and assigned the following errors :

" That the court erred in rendering judgment for defendant, when they should have entered judgment for plaintiff, because the defendant had broken his covenant, ' *that the parties* (said Smith and wife) *had a good and sufficient right to sell and convey the premises to Rogers in fee,*' and said Smith has not made a good title to Rogers, being defective in these particulars, viz. :

"1. The devise of a ' house' in Thomas Robinson's will did not vest any title to the lot in question, adjacent thereto, in Jane Robinson, the devisee, wife of defendant.

" 2. The deed of marriage settlement contains no words creating a trust, and the use created by said deed being executed by the statute of uses; in the *cestui que trust*, the defendant was entitled to curtesy therein, and his estate thus raised passed to his assignee in bankruptcy, and not by the deed in question.

" 3. The decree in Chancery, pretending to reform the marriage settlement, and vest in Jane Robinson (Mrs. Smith) a power to convey during her lifetime, was without jurisdiction, authority, or proof, and void. Also, of no effect, because the infants were not bound until of age.

"4. The act of Assembly assuming to confer an authority to Jane

Robinson, (Mrs. Smith,) to divest the estate of her heirs, is contrary to said deed, and contrary to common right and *magna charta,* and directly impairs the obligation of the contract."

*Craft,* for plaintiff in error.—The first objection to the title was raised upon a doubt started in 2 Hilliard's Abr. 528, supported by 4 Leonard, 16; 2 Chan. Cas. 26, and Keilw. 57, whether the word *" house"* without *" with appurtenances,"* carried the garden and curtilage, (within which lay the premises conveyed.) If the court, however, should approve directly the dicta in 4 Rawle, 342, citing Cro. Eliz. 89; Plowden, 171; 2 Saund. 401, note 2, to which might be added Shep. Touchst. 94; Co. Litt. 5, b, n. 1, this objection might be removed. See also Clements *v.* Collins, 2 Term Rep. 498, and 3 Metcalf, 423.

The second objection was, that the deed of settlement being deficient in the technical words necessary, (2 Chitty Bl. p. 335, note 52,) to create a trust, the use was executed by the statute of uses, and the legal estate remaining in the *cestui que trust,* the wife became subject to the husband's right of curtesy, which passed away by bankruptcy since the marriage. This difficulty is also obviated, if the court should adopt the doctrine of 1 Vernon, 415; 7 Term Rep. 648; 4 Dessaus. 550; 10 Conn. 244; 10 Johns. 494; 8th Yerger, 33, and especially Ayer *v.* Ayer, 16 Pickering, 327.

The third objection was to the decree in Chancery; pretending to reform the deed of settlement and assuming to restore to Mrs. Smith a power of appointment. This was irregular and inefficient; because the infant defendants were not summoned personally. Harrison's Chancery, 474, 478, 479; 3 Dana, 405; 3 Bibb, 525. Because no answer was filed, or it was withdrawn. 4 Dana, 136. No special order was made before the decree was taken *pro confesso;* 2 Johns. Ch. 247; nor was the decree founded upon proof or evidence, as it should always be, against infants. 8 Ohio Rep. 381; 3 Johns. Ch. 367. And that although the decree could not be reversed *collaterally,* yet it might be reviewed by infants, on their arriving at full age, who are entitled to put in a new answer. 6 Paige, 353.

The act of Assembly could not divest the rights of the children. To show these rights, he cited 1 Dessaus. 437; 2 Dessaus. 126; 9 Dana, 481; 3 Hen. & Munf. 399; 2 Har. & Gill, 34. And that the act of Assembly was against common right and Magna Charta, 1 Bay, 252; Harper, 200; Cooke, 214; 1 Martin, 48; 2 Peters, 658; 2 Dallas, 310; 1 Yeates, 260; 5 Cowen, 346; 8 Wheat.

464; 9 Cowen, 664; 5 Watts & Serg. 171; 2 Barr, 24, 285, 393; 18 Wend. 14, and 2 Rawle, 373.

*Dunlop*, contrà.—We are anxious, on both sides, that the plaintiff should get a good title, and that this court would pronounce the title in controversy here a good one. The act of Assembly is a reformation of the contract. The legislature had the power to pass this act. It was no infringement of the marriage article; nor did it interfere with the rights of the children. If the husband, defendant in this case, had died, his wife would have been restored to all her original rights in the property.

The legislature have the power to reform a contract, provided they do not impair its obligation. The object of this act was, not to impair, but to declare what the contract was, and to establish it. He cited, Menges *v.* Wertman, 1 Barr, 218; Bradee *v.* Brownfield, 2 Watts & Serg. 277, and Norris *v.* Clymer, 2 Barr, 277, which last case, he argued, was decisive of this. This is not a marriage contract, which is a bargain between those about to be united in the contract of marriage. The children were not parties to it.

*Oct.* 2. ROGERS, J.—The case is stated for the purpose of testing the validity of the title of a certain lot, No. 301, in the city of Pittsburgh, sold and conveyed by a deed of bargain and sale, by Jonathan H. Smith, Esq., and Jane, his wife, late Jane Robinson, to Mahlon Rogers. The title to the premises was held by Jane Robinson, now Jane Smith, under and by virtue of a will from her father, Thomas Robinson, containing the following clause: "I give and bequeath to my daughter Jane Robinson, the house that I now occupy in Third street, with the furniture and carriage, to be at her disposal."

Jane, in contemplation of marriage, with the full assent of her intended husband, Jonathan H. Smith, conveyed the lot now in controversy to Charles Avery, in trust for the sole and separate use of said Jane Robinson, &c., subject, &c., and without being subject to the control, appropriation, assignment, or interference of any future husband or of his creditors during her natural life, and in the event of her death, in trust, that he, the said Charles Avery, shall grant, bargain, and sell and convey the same to the heirs at law of said Jane Robinson then being in existence, unless the said Jane Robinson shall, during her lifetime, have made an appointment or testamentary disposition in writing of all or any of said property, in which case the said trustee shall convey the same pursuant to the testamentary disposition aforesaid.

VOL. IV.—13                    I

Under this deed of trust, in which the intention is plainly expressed to preserve the property for the benefit of the wife and her certain children, it is obvious that the only power reserved to the wife is the right of disposition by appointment, in the nature of a will. This intention, so far from being ambiguous, as has been assumed, is so clearly indicated in the deed, that it is impossible for the utmost ingenuity to cast a doubt upon it. Every person is presumed to know the law ; and in this state the rule is clearly established, that a *feme covert is*, in respect to her separate estate, to be deemed a *feme sole*, only to the extent clearly given by the instrument, by which the estate is settled, and has no right of disposition beyond it. Lancaster *v.* Dolan, 1 Rawle, 247. So that, if this depended on the original deed of trust, it would be too clear to admit of argument, that the deed from Smith and wife to Rogers would be simply void. It would never bar the right of the wife when she became discovert, much less the right of her children, which it was also intended to protect.

But of this the parties appear to be conscious, for they do not rely upon the deed, as originally drawn, but upon the reformation of the deed by a bill in Chancery, and an act of the legislature, which has been procured to bolster up the otherwise insuperable objection to the title.

But the counsel for the plaintiff in error contends, that the decree in Chancery, pretending to reform the marriage settlement, and vest in the wife a power to convey during her lifetime, does not validate the deed, because the court had no jurisdiction, authority, or proof; also, that it is of no effect, because the infants were not bound by it until of age.

That the act of Assembly assumes to confer an authority to Jane Robinson, (Mrs. Smith,) to divest the estate of her heirs, contrary to said deed, and is contrary to common right and Magna Charta, and directly impairs the obligation of the contract.

It is unnecessary to contend, that a Court of Chancery will in no case reform a deed of trust, securing a separate estate to the wife, or a deed of marriage settlement, which, for the most part, is intended as well to make provision for the issue of the marriage as for her benefit; but this may be safely laid down as a general rule, that the court will not interfere to impair or change her rights, or the rights of the children, except the mistake in the deed be made to appear by the strongest and most overwhelming proof. Experience teaches us, that in proportion as her power over the estate is enlarged, her security becomes less, in consequence of the unbounded influence which

the husband may acquire over her actions either by kindness or cruel treatment. But however this may be, yet no case has been cited, and I think none can be produced, where the court has undertaken to reform such an instrument upon a bill or petition of the husband and wife, without proof to sustain the averment in the bill, and, indeed, where it appears on the face of the bill itself, that they are unable, from the death of the witnesses who were present at the execution of the instrument, to prove the unsupported allegation, that there was a mistake made by the scrivener in drawing the deed. To reform a deed, under such circumstances, would be productive of great injustice and imposition, and it is obvious there would be no protection whatever from the improper influence which many husbands may be disposed to exercise over the will of the wife. A way is made easy, and we want no better proof than the present case, through the instrumentality of the court, by which he may acquire the control and absolute disposition of her estate, however anxious she and her friends may have been to guard against such a result by a deed of trust or marriage settlement the most carefully and scientifically drawn. Her interest, and the rights of her innocent and unprotected offspring, if this be permitted, lie at the mercy of an unprincipled and profligate husband. Here the court, acting as a court of equity, have reformed the deed of trust in a most essential particular on a naked, unsupported declaration of the husband and wife, without the shadow of proof being required; nay, the bill on which the decree is based, containing an acknowledgment that no such proof can be obtained. Such a decree, in determining the right and title to the premises, is entitled to but little consideration. Her rights, and the title of her children, cannot be impaired by it; and must eventually rest upon the deed as it originally stood; which, as we have seen, confers no power to dispose of the estate by deed, but by will, or an appointment in the nature of a will.

Another objection is urged against the decree, which is equally fatal. The deed of trust, be it remarked, is in the nature of a settlement. That is the plain intention of the parties, and whether it be an anti or post-nuptial settlement, matters not. It cannot with any propriety be said to be in fraud of the husband's marital rights. It was not concealed from him, but, as appears from the bill in Chancery, was executed with his knowledge and consent. He was in effect a party to the deed, and, as such, upon every principle of right and justice he is bound by it. The object of the settlement is not alone for her benefit, but for the benefit of her children, who take as purchasers, and whose rights are peculiarly under the protection of a

court of equity. The deed, it is true, is inartificially drawn; but enough appears to indicate that by the term "heirs at law" of the wife, it was intended to designate the children of the marriage. Now, how does the case stand on the bill? At the time it was filed there were four children the issue of the marriage. They, as well as the trustee, are made parties to the bill. The subpoena is served on the trustee for form sake, and on Thomas G. Robinson, appointed by the court guardian *ad litem*, the 7th January, 1846, also for form only. The 31st January, 1846, the guardian files his answer. The 11th April following, the trustee withdraws his appearance. It seems he never filed any answer. On the same day the guardian appointed for the express purpose of protecting the rights of the children, withdraws his answer, and, what is still more strange, with leave of the court, withdraws his appearance, and on the same day the court decrees the reformation of the contract. Thus a court of equity, acting under some strange delusion, have entirely changed the deed of trust, left the wife and children without any protection, on the bare allegation of the wife and husband, the latter having a deep and direct interest in procuring the alteration, by means of which he afterwards secures to himself the whole estate, or which is the same thing, sells it, and he pockets the money. In effect, no answer, no appearance, either by the trustee or the faithful guardian.

How the trustee and the guardian can reconcile such conduct to their sense of duty, passes my comprehension.

Such a proceeding, I am inclined to believe, is without example in a court of equity, and leads irresistibly to the conclusion that there has been some concert of action detrimental to the rights of the wife as well as of the children. This presents a case of such gross imposition upon the court, that the decree cannot, in my judgment, impair, or in any manner affect either the title of the wife or the rights of the minor children. They remain unaffected by the decree, and in precisely the same situation they were before the court undertook to reform the deed. So anxious are courts of equity to protect infants, that in Mills *v.* Dennis et al., 3 Johns. Ch. Rep. 367, the chancellor says, a decree cannot safely be obtained against an infant, upon the mere fact of taking the bill *pro confesso*, or upon an answer in form by the guardian *ad litem*. The answer in such cases generally is, that the infant knows nothing of the matter, and therefore neither admits nor denies the charges, but leaves the plaintiff to prove them as he shall be advised, and throws himself upon the protection of the court. A decree upon such an answer would not bind the infant, and he could open it or set it aside

when he comes of age. No laches can be imputed to an infant, and no valid decree can be awarded against him merely by default. The plaintiff in every such case ought to prove his demand either in court or before a master, and the infant is usually entitled to a day, to show cause when he comes of age.

As to the act of Assembly, the same objection may be made as in Bumberger *v.* Clippenger, 5 Watts & Serg. 311. In that case it is ruled that a vendee will not be compelled to accept a doubtful title, and the vendor cannot therefore recover in an action for the purchase money, when his title depends upon an act of the legislature, which authorizes him to sell and convey the estate in fee-simple, in which, before the passage of the act, he had but a life-estate. As in that case, the children whose rights are materially affected, are not before us, except indirectly, nor were they represented before the legislature. They are not concluded, for although their rights are not expressly saved, the act binds none but the parties. Under the authority of that act, we cannot say that the title is good, as it may be that the children may assert a right which is unquestionable under the original deed.

The remarks already made supersede the necessity of noticing the other objections to the title, but on one which may hereafter arise, we think it proper to express an opinion. That the devise of a house, in the will of Thomas Robinson, did not vest any title to the lot in question, adjacent thereto in the devisee. This question is considered by Mr. Justice Kennedy in Bennet *v.* Bittle et al., 4 Rawle, 339, who, after citing all the authorities, has come to the conclusion that the word house is synonymous with messuage, and conveys, as in that case, all that comes within the curtilage, without the words *cum pertinentiis* superadded. In this opinion we concur.

Judgment for plaintiff for $401, as per case stated.