# Wolff *v.* Hafer, Appellant.

*Will—Devise—Construction—Estate in fee simple.*

Testatrix in a will written by herself and inartificially drawn stated that she was about to undergo a critical operation, and continued as follows: "Would like to say this is what I want done with my personal property and real estate." She then made a number of bequests of money and some articles of jewelry. She continued as follows: "Now I think my home on Philadelphia (Avenue) should be sold and a small house built on my lot on Wolf Street for my sister Laura and my dear boy Roland, house not to cost more than two thousand dollars but comfortable and the balance of all moneys put on interest for Roland my boy, Dr. Palmer will you kindly see this is carried out, let Mr. Seiders fix this up. I have given my watch to my sister, and as stated she and Roland are to have the bulk of everything, only the names mentioned herein. Please see that my dear boy is taken care of." Roland was her sister's son and was reared by testatrix and regarded as her son. The doctor mentioned was the physician of the testatrix, and Mr. Seiders was her neighbor and a justice of the peace. *Held,* that Laura and her son Roland took an estate in fee simple in the Wolf Street property.

Argued March 5, 1912. Appeal No. 84, Jan. T., 1912, by defendant from judgment of C. P. Franklin Co., Feb. T., 1912, No. 102, for plaintiffs on case stated in suit of James Roland Wolff and Laura Guthrie v. R. O. Hafer. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Case stated to determine marketable title to real estate. Before GILLAN, P. J.

From the case stated it appeared that Mary Bell Wolff died on July 22, 1905, leaving a will which was as follows:

"July 18, 1905. As I am about to undergo a critical operatig would like to say this is what I want done with my personel property & realstate three hundred dollers to be giving to my Brother James Grant Guthrie one

582          WOLFF *v.* HAFER, Appellant.

hundred each to Maggie and Callie Wolff & Mrs. Ellen
hassler; one hundred to my Sister who lives in Chicago
ills Mrs. Frederick Tracey.   Ten dollars to Miss Re-
becca Leonard, my three oppal ring to Miss Ida Allison,
and the one oppal to Margaret Hassler My pearls & Tur-
quoise ring to Mable Guthrie my amethyst ring to cousin
Mame Guthrie of Lancaster city   Now I think my home
on philadelphia should be sold and a small house built
on my lot on Wolf street for my sister Laura & my Dear
boy Roland house not to cost more than two thousand
dollers but comfortable and the balance of all moneys
put on interest for Roland my boy, Dr. Palmer will you
kindly see this is carried out let Mr. Seiders fix this up
I have given my watch to my sister and as stated she
and Roland are to have the Bulk of Every thing, only
the names mentioned herein.   Please see that my dear
boy is teaken care of  & hope he will grow up a good an
useful man   May the Lord Bless & take care of him.
Signed by me this day.

> (Sg.)    MARY BELLE WOLFF.    (Seal.)
(Sg.)    MARY BELLE WOLFF.    (Seal.)

Will have Roland sign his Name here as he seen me
write it.

> (Sg.)    JAMES ROLAND WOLFF.    (Seal.)"

Laura Guthrie and her son Roland contracted to sell
the Wolf street property to defendant.   The court in an
opinion by GILLAN, P. J., held that they had a good title
in fee simple and entered judgment in their favor for
$2,000.

*Error assigned* was the judgment of the court.

*William S. Hoerner,* for appellant.

*John D. Rice,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, March 18, 1912:
Mary Bell Wolff died in the borough of Chambers-

burg, on July 22, 1905, leaving a last will, dated July 18, 1905. The will was probated on July 26, 1905, and letters of administration were issued with the will annexed. The testatrix was a widow at the time of her death with no children nor other lineal descendants, and left to survive her two sisters and one brother of the half blood and a nephew, James Roland Wolff, a son of Laura Guthrie, one of the half-sisters. Wolff was reared in the home of the testatrix as her son. She owned a lot on Philadelphia avenue on which was erected a two-story brick dwelling house, her residence, and a vacant lot on Wolf street, both in Chambersburg. The decedent left an estate of about six thousand dollars after the payment of debts. The will provides inter alia as follows: "Now I think my home on Philadelphia should be sold and a small house built on my lot on Wolf street for my sister Laura and my dear boy Roland house to cost not more than two thousand dollars but comfortable and the balance of all moneys put on interest for Roland my boy." In pursuance of an order of the orphans' court the administrator sold the "house on Philadelphia" (avenue) referred to in the will, and with two thousand dollars of the proceeds derived from the sale erected "a small house" upon the lot of ground of the decedent situate on Wolf street in Chambersburg. Laura and Roland took possession of the Wolf street property and have since occupied it, claiming to own it in fee simple. They entered into a written agreement with R. O. Hafer, the defendant, to sell and convey the property to him in fee. They tendered a deed to Hafer which he refused to accept because, as he alleged, they could not convey a fee simple title. This action was brought to recover the purchase money.

The single question in the case is whether Laura Guthrie and Roland Wolff took a fee simple title to the Wolf street property under the will of Mary Bell Wolff. The will is brief and was very inartificially drawn, but there is no difficulty in ascertaining from the whole in-

strument the intention of the testatrix as to the disposition of her property. Anticipating that an operation about to be performed on her would be fatal, she wrote the will prefacing the dispositive part with "What I want done with my personal property and real estate," thereby disclosing the intention to dispose of her whole estate. With this expressed intention of disposing of the entire estate, the testatrix first makes several small bequests of money and jewelry to certain relatives, and then uses the language above quoted. The manifest intention of this provision was that with the two thousand dollars of the proceeds derived from the sale of the testatrix's resident property, a small house should be erected by her personal representative · on the Wolf street lot, and the property thus improved should belong to Laura and Roland in fee. There is no gift over of the property and no other disposition of it in the will. Equally true is it that if the clause does not carry a fee to the Wolf street property, Roland takes no title to "the balance of all moneys" given him in the same clause. Unless, therefore, the provision passes in fee the property. to the two devisees, there is an intestacy as to the larger part of the estate which, as pointed out above, does not accord with the expressed intention of the testatrix to dispose of her entire estate, nor with the settled rule of testamentary interpretation that there is a presumption against the testatrix dying intestate as to any part of her estate.

If the clause in question stood alone, unaffected by other provisions of the will, it might not be sufficient to carry a fee to the real estate. But when read in the light of the whole instrument, as it must be, the intention to devise the property in fee is clear. Immediately succeeding the language quoted above and as part of the same sentence is the following: "Dr. Palmer will you kindly see this is carried out and let Mr. Seiders fix this up  I have given my watch to my sister and as stated she and Roland are to have the bulk of everything, only

the names mentioned herein." Dr. Palmer was the physician of the testatrix, and Mr. Seiders had been her neighbor for many years and was a justice of the peace. Had the testatrix used the precatory word "wish" instead of "think-should" in the clause, there could be no doubt that a fee would pass. But the language employed is stronger than if she had simply expressed a desire that her residence property should be sold and a house erected on the Wolf street lot for the two beneficiaries. The testatrix says she thinks the sale of her home should be made and the house should be built for Laura and Roland, and requests that her friend and physician "will kindly see this is carried out." This is equivalent to a positive testamentary direction to sell the real estate and erect a house on the vacant lot for the two devisees. This was clearly a gift or devise of a house, and hence of the lot on which it was built: Bennet v. Bittle, 4 Rawle 339; Rogers v. Smith, 4 Pa. 93.

Having made the small bequests to relatives and disposed of the real estate with a gift of the balance of her money to Roland, the testatrix declares that "as stated she (Laura) and Roland are to have the bulk of everything." The bulk of the estate would go to them only in the event that the testatrix had devised to them the house and lot in fee. Without the real estate or with any lesser interest therein than a fee, they would not take the greater part of the estate. In fact, if the language of the clause is not sufficient to create a gift of the Wolf street real estate, it is equally ineffective to make a gift to Roland of "the balance of all moneys" of the testatrix, and as the residue of the money and the undivided half of the real estate is the only part of the decedent's estate given to Roland, it follows that he would take nothing under the will. The whole tenor of the will contradicts any such conclusion. Roland was reared by his aunt and regarded as her son, and the will shows that he was the primary object of her bounty. The last injunction in her testament is "Please see that my dear boy is taken

care of." We think it manifest that the testatrix intended to and did give the Wolf street property in fee to Roland and his mother. It follows that they can convey a fee simple title, and that the learned court below was right in entering judgment in favor of the plaintiffs and against the defendant.

The judgment is affirmed.