## Semple's Estate.

*Partition—Wills—Construction—Life estate.*

1. Testator in his will used the following words: "I give, devise and bequeath all my estate, real and personal, unto my wife and my surviving sons and daughters in shares according to the intestate laws of Pennsylvania;" and in a codicil he used the following words: "I bequeath the Dwelling House with everything in it to my wife as long as she lives:" *Held,* that under this codicil the wife's interest, as given in the first clause, was enlarged to a life estate in the dwelling-house, and that she did not take in fee simple under the 9th section of the Act of April 8, 1833, P. L. 249.

2. The purpose in construing a will is to establish the intention of the testator. Technical rules of construction are only resorted to in cases of ambiguity. Where the intent of the testator is plain from the whole will, the will interprets itself.

3. In construing a will, all the testator's circumstances should be considered, and the court should, as far as may be, place itself in the position of the testator at the time the will was made to discover his intention.

4. Under the provisions of this will, if it be held that there is anything ambiguous or technical, the rule of interpretation that would apply is that the heirs are not to be disinherited except by express words or necessary implication.

Citation for an inquest in partition. O. C. Northampton Co.

*James W. Wilson* and *Kirkpatrick & Maxwell,* for petitioner.

*Asher Seip* and *N. H. Larzelere,* of the Montgomery County Bar, for respondents.

STEWART, P. J.—This was a petition of a son and legatee for a citation to show cause why an inquest in partition should not be awarded of the property on East Northampton Street, referred to in testator's will as "the Dwelling House." The following is a copy of the will:

"I, Henry B. Semple, of the City of Easton, Pennsylvania, do hereby make and declare my last will and testament as follows:

"I give, devise and bequeath all my estate, real and personal, unto my wife and my surviving sons and daughters in shares according to the intestate laws of Pennsylvania; said estate to be held by them intact and undivided during their lives and the lives of the survivors of them.

"I authorize my executrix and executor to carry on and continue, during the above period, the business now carried on by me, and for such purpose to retain and employ therein the capital invested therein at the time of my decease; and to employ my two sons as managers of said business upon

proper and equal compensation. I also authorize my executrix and executor to manage my real estate and other investments during the above period, and also to employ my two sons to manage the same. My said executrix and executor shall at reasonably frequent periods distribute the profits and income of my estate, during the above period, to those entitled thereto; they shall be free from all responsibility and be indemnified out of my estate for any loss arising in their management of my said business and estate.

"I appoint my wife and son, Henry B., executrix and executor of this my last will and testament.

"Witness my hand and seal this ninth day of September, nineteen hundred and four.

"Signed, sealed, published and declared by said Henry B. Semple, testator, as his last will and testament in the presence of us

Howard P. Kinsey     HENRY B. SEMPLE (Seal)
Allen Carpenter

"I bequeath the Dwelling House with everything in it to my wife as long as she lives.       HENRY B. SEMPLE."

The will was typewritten. The entire codicil was written by the testator in his own handwriting. Prior proceedings concerning the other property of the testator were had, and they are discusssed in an opinion reported in 19 Northampton County Reporter, page 1. An answer was filed by the three daughters, denying petitioner's right to a partition, for the reason that the codicil vested the dwelling-house in the widow in fee simple, and that the widow by deed, in her lifetime, had conveyed the property to the three daughters, which deed was confirmed by the widow's will, since her decease duly probated in the office of the Register of Wills of Northampton County. The other son appeared, but took no part in the proceedings. It is undisputed that the terms "dwelling-house" and "messuage" are synonymous, and conveyed land: Rogers v. Smith, 4 Pa. 93; Wolff v. Hafer, 235 Pa. 581. The contention of the daughters is that the codicil gave a fee to the mother. The 9th section of the Act of April 8, 1833, P. L. 249, provides: "All devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over or by words of limitation or otherwise, in the will, that the testator intended to devise a less estate." It is contended that by the terms of his will he gave all his estate to his wife and children, but when he came to write the codicil, it was his intention to take the dwelling-house out of the previous devise and give it to the wife absolutely, and that if this view does not prevail, testator must be held to have died intestate as to the dwelling-house, and left an estate which was undisposed of by his will. The argument is that, under the authorities, testator has given the personal property absolutely to his wife. Those authorities, with respect to the personal property, are: Brownfield's Estate, 8 Watts, 465, where it was held: "A bequest of personal estate to a legatee for life, without any disposition of it over after her death, may be paid to her absolutely by the executor, and will be credited to him upon the settlement of his administration account:" Silknitter's Appeal, 45 Pa. 365, where it was held: "The devise of the interest of the fund, without the interposition of trustees or direction for investment, without more, vests an absolute estate in the fund in the devisee:" and Rogers' Estate, 245 Pa. 206, where it was held: "The general rule that a gift of personal property for life without a gift over passes the whole estate is not a rule of law, but a rule of construction, in aid of discovery of the testator's intention." Many other authorities might be cited to the same effect. It is, however, contended that where the real and

personal property are blended, the same rule would apply with respect to the real estate, and Redding v. Rice, 171 Pa. 301, is cited as so ruling. We do not so read that case. Mr. Justice Mitchell decided that case upon the testator's intention in the particular case as he has discovered it from reading the entire will. On page 306 there is a bracket as follows: "and it is to be noted that the testator blends realty and personalty together;" but he nowhere says that the doctrine laid down in above cases as to personalty applies in a case where there is a blending of the realty and the personalty. In that case he used the language often referred to subsequently by judges as follows: "Precedents are of little value in the construction of wills, because, when used under different circumstances and with different context, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail. Neither precedents nor rules of construction can override the testator's expressed intent." In this connection, reference may be made to Long v. Hill, 29 Pa. Superior Ct. 606, the syllabus of which is: "The blending of real and personal estate in a testamentary disposition may, in the absence of any inconsistent provision, indicate an intention to give the same interest in both, and, hence, that when the language employed is such as to create a fee in the realty, the testator intends to make the gift of the personalty absolute. But even terms expressing an absolute gift of the personalty will not create a fee in the realty when it appears that it is the intention of the testator to give a less estate. Testator, stating that it was his intention to dispose of his whole estate, gave and bequeathed to his wife all of his estate, real, personal and mixed, 'to be held for her own use and benefit as long as she shall remain my widow.' He appointed his wife and son executors and gave them full power to sell real estate. There was no residuary clause in the will. Held, that the widow did not take a fee in the real estate." In Freeman's Estate, 220 Pa. 343, the doctrine as to personal property was overthrown by the actual intent of the will. The syllabus of that case is: "Where a husband gives, devises and bequeaths all his real and personal estate to his wife, 'to take and use same and the net income thereof during all the term of her natural life, without giving security as life-tenant thereof,' without limitation over or intervention of trustee, the wife takes a life estate only in the personalty. If an absolute estate had been intended, the words 'without giving security as life-tenant thereof' would be meaningless." Hence, in the present case, as in all will cases, we must get at the intent of the testator. In Woelpper's Appeal, 126 Pa. 562, the syllabus is: "It is often said, 'the question in expounding a will is not what the testator meant, but what is the meaning of his words;' yet by this it was never intended to say that a testator's meaning, when apparent, can be disregarded, but that it cannot be got at *aliunde* by what he might have meant; the search is confined to his language, but the object is still his meaning: Per Mr. Justice Mitchell." In the very late case of Schuldt v. Reading Trust Co. et al., 270 Pa. 360, the attempt was made, as it seems to us it is made in the present case, to detach one clause of the will from another. Mr. Chief Justice Moschzisker said, on page 363: "The trouble with plaintiff's position is that it fails to take into consideration the language of the gift as a whole. He would separate the devise into two parts, and discard the second one; whereas each portion of the expression of an entire testamentary idea must be read in connection with its context in order to ascertain the real intent of the testator (Boies's Estate, 177 Pa. 190, 194-5; Krebs's Estate, 184 Pa. 222; Cooper's Estate, 150 Pa. 576, 583-4);

'especially is this so when, as in the present case, the prior gift is made in words which in themselves only raise a presumption of a fee:' Sheets's Estate, 52 Pa. 257, 263-4. A justifiable 'transposition' of the provisions in a will is always allowed 'to ascertain the true meaning of a testator:' Cooper's Estate, 150 Pa. 576, 578." In the present case the objects of testator's bounty were his wife and his surviving sons and daughters. No other persons or objects are mentioned in the will. In the second clause of the will he gives them the same interest that they would take under the intestate laws of Pennsylvania; that is, the wife has a one-third life interest and the others have a fee. There is no date to the codicil. We cannot assume anything as to the time when it was executed, but he evidently wished to enlarge his wife's interest in his dwelling-house to just the extent that he said, by giving her the right to live in the dwelling-house, with everything in it, as long as she lived. There was no necessity for the testator to direct anything to be done with the property after her death, for the reason that he had already disposed of the fee by the second clause of the will. If this will had contained prior devises to different sons and daughters, mentioning them by name, and there had been no mention at all of the widow in the prior clauses of the will, and the testator had used the same words that he has used in the present codicil, there might be some force to the contention now made by the learned counsel for the daughters; but where all the estate, real and personal, has been disposed of, as it was in the present will, then the codicil must be linked to it, and it gives a mere enlargement of the wife's interest in the dwelling-house, and the present contention cannot apply. Many cases might be cited that are similar to the present case. We shall only refer to a few of them. In Reynolds's Estate, 175 Pa. 257, on page 260, Mr. Chief Justice Sterrett said: "On Feb. 8, 1895, appellant's husband, Sheldon Reynolds, died testate, leaving to survive him his said wife and a minor son, then about seventeen years of age, whose guardian is Benjamin Reynolds. In his last will, probated a few days after his decease, the testator made the following disposition of his estate: 'All my estate, real, personal and mixed, wheresoever situated, I give and bequeath to my beloved wife, Annie B. D. Reynolds, for and during her natural life;' and, without making any other disposition of the same, he appointed his wife and Andrew H. McClintock executors of his will 'without bonds.' The fund in court for distribution, $1562.50, is the proceeds of a private Orphans' Court sale of part of testator's real estate, and is, of course, distributable as realty. For the purpose of determining whether, under her husband's will, appellant took a fee in his real estate or not, the guardian of the minor and all parties interested were brought into court and heard. Upon due consideration of the premises, the learned court held, in substance, that appellant took only a life estate in the realty of which her husband died seized, and, accordingly, entered a decree to that effect, and also awarded the fund in question to the guardian, 'subject to the widow's right to the income thereof.' This appeal was taken and each branch of the decree is assigned as error. As to the first, we are of opinion that the court was clearly right in construing the will. So far as testator's real estate is concerned, the devise thereof to appellant is manifestly limited to a life estate by the concluding words, 'for and during her natural life.' Without practically ignoring the plain and universally accepted meaning of these words, it is impossible to otherwise construe the devising clause above quoted, and as to that branch of the decree the court should be sustained." In Shaner v. Wilson, 207 Pa. 550, the syllabus is: "A devise of land by a father to a son 'during his natural life,' without any gift over, vests in the son merely a life estate." In that

case there was no devise over nor any provision for the remainder, such as we have in the present case. On page 552, Mr. Justice Potter said: "There was no ambiguity in the words which give this portion of the farm to Joseph Wilson for his 'natural life.' Nowhere in the will does there appear a testamentary disposition of the entire estate. We cannot assume that the testator intended any." He then goes on and quotes from a number of cases, particularly quoting the rule that the heir is not to be disinherited except by express words or necessary implication, and then again he said: "Our examination of this will leads us to agree with the trial court that, as to the real estate here involved, the testator rested content with its disposition to his son Joseph during his life, without making any provision for the remainder. And that upon the death of Joseph Wilson, the remainder being undisposed of, vested, under the intestate laws, in the heirs general of John Wilson." In McCullough's Estate, 272 Pa. 509, the syllabus is: "The absence of a gift over on the death of the wife does not, under the particular wording of the will, vest a fee in the wife. Though the absence of a gift over is some indication of a purpose to give to the first taker an estate in fee, yet the will, as a whole, may disclose a contrary intention." In the late case of Schaaf et al. v. Politowski, 276 Pa. 31, the syllabus is: "Where a testator devises and bequeaths all the residue of his estate to his wife, 'to have and enjoy the same during her natural life,' and further gives 'her privilege and full power, if she can get good prices for the said real estate, to make sale of the same and give good title to the same,' and appoints his wife executrix, the wife takes only a life estate, and not a fee simple absolute, under the Act of April 8, 1833, P. L. 249. Kiefel v. Keppler, 173 Pa. 181, distinguished." Mr. Chief Justice Moschzisker, in that case, quotes largely from McCullough's Estate, 272 Pa. 509, and approves what was there said. In addition to the discussion in the above cases as bearing on testator's intent, while not discussing the legal effect of the attempted direction to hold the property, attention should be directed to the words which he uses following the devise in the second clause, as follows: "said estate to be held by them intact and undivided during their lives and the lives of the survivors of them." Those words show plainly that he never intended that any of this property should be sold until his widow and sons and daughters had passed away. That is to say, that he really intended that all of them, except the last survivor, should have a life estate in all the property, including the dwelling-house. It would be an unwarranted conclusion to hold that he intended that, as soon as he died, his wife could dispose of the dwelling-house in fee, as she attempted to do in the present case. It is also to be noticed that if she had a fee, it would put it in her power to dispose of the property by deeding it or willing it, as she did in the present case, to the three daughters, which would exclude the two sons. In the very late case of Brush's Estate, 277 Pa. 9, Mr. Justice Simpson, on page 12, after referring to the possibilities of that case and to the contention of counsel that "the clause of the will (under consideration) is open to ambiguous construction," said: "Viewed in this light, but one conclusion is possible, for 'in the construction of a will of doubtful meaning (the rule that) every intendment is to be made in favor of the heir or next of kin (here, testator's only child) is of universal application:' Nebinger's Estate, 185 Pa. 399, 404; Shaner v. Wilson, 207 Pa. 550; Grothe's Estate, 229 Pa. 186." The same result would follow in this case. We have not discussed the contention of counsel for the daughters, that the present case is ruled by Kiefel et al. v. Keppler et al., 173 Pa. 181, and Hege v. Ickes, 267 Pa. 57, for the reason that the former case is fully explained in Schaaf et al. v. Politow-

Semple's Estate.

ski, 276 Pa. 31, and for the reason that the latter case is also explained in Edwards et al. v. Newland, 271 Pa. 1, where Mr. Chief Justice Moschzisker expressly said: "We take occasion to correct an error of the reporter in Hege v. Ickes, 267 Pa. 57. The first paragraph of the syllabus states a holding that the wife had 'an absolute fee simple estate;' whereas, what we ruled was that she, as life-tenant, had a right to consume the principal, and, therefore, power to convey an estate of the character mentioned." Every one of that class of cases on respondents' brief discusses the effect of provisions which give the wife the right to sell real estate and consume the proceeds; which provisions are not in this will. With respect to that class of cases referred to in the same brief, of which Rohrbach v. Sanders, 212 Pa. 636; Scott v. Murray, 218 Pa. 186; Hults v. Holzbach, 233 Pa. 367, and McCall v. Umbenhauer, 270 Pa. 351, are types: in those cases the underlying principle is that the words "so long as she remains my widow," or other like expressions, attach a condition to the gift which makes it defeasible in toto on a breach. None of them decided that the widow could at once sell the property. What they decide is that if she conforms to the condition and dies, the property belongs to her estate in fee simple. The principle of those cases is not analogous to the present case. After carefully considering all the authorities cited, we are of opinion that no legal reasons exist for refusing this application.

And now, June 9, 1924, inquest in partition is awarded as prayed for.

From Henry D. Maxwell, Easton, Pa.