## Kusang Estate

*Laster, Strohl, Kane & McDonald,* for petitioners.
*John Dano,* for respondents.

BRADY, P. J., October 8, 1959. — Petitioner, John Kusang, seeks the appointment by the court of commissioners to designate the boundaries of the curtilage or lot appurtenant to "house and lot known as 1551, 1553 and 1555 Von Storch Avenue, Scranton, Pennsylvania," devised to him by will of his mother, Mary Kusang, decedent. Decedent devised "house and lot known as 1545, 1547, and 1549 Von Storch Avenue, Scranton, Pennsylvania," to one of the respondents, Peter Kusang, who conveyed the premises to the other respondent, Anna Batyko, his sister, and Michael Batyko, her husband.

Respondents filed preliminary objections and seek dismissal of the petition, principally because, they contend, the court has no jurisdiction. They agree that it appears that petitioner is proceeding under the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 34(*a*), which reads as follows:

"Section 34. (*a*) Whenever, by any last will and testament, any dwelling house or other building is devised to any person or persons, without defining the boundries of the curtilage or lot appurtenant to such building and necessary for the use and enjoyment of the same, it shall be lawful for any of the parties interested to apply, by petition to the orphans' court of the county in which such building is situate, for the appointment of commissioners to designate the boundaries of the curtilage or lot appurtenant to such building

and necessary for the convenient use of the same for the purposes for which it was intended."

The court is unable, from the pleadings, to determine whether the appointment of commissioners is actually necessary "to designate the boundaries of the curtilage or lot appurtenant to such building and necessary for the convenient use of the same for the purposes for which it was intended." A hearing upon the matter should enlighten the court as to whether any real issue of boundaries between the parties' premises exists, and, if it does, is it the result of decedent's failure to define the boundaries of the devise. The answer to this question, inter alia, makes it necessary to take testimony, since the court should know all the pertinent physical facts before it will exercise the jurisdiction sought by petitioners. Disposition of the preliminary objections will be made after the hearing.

Now, October 8, 1959, it is hereby ordered that counsel agree on a convenient date to take testimony sur petition of John Kusang.

### Second Opinion

BRADY, P. J., April 4, 1960.—We repeat what we stated in our opinion of October 8, 1959, that petitioner, John Kusang, seeks the appointment by the court of commissioners to designate the boundaries of the curtilage or lot appurtenant to "house and lot known as 1551, 1553 and 1555 Von Storch Avenue, Scranton, Pennsylvania," devised to him by the will of his mother, Mary Kusang, decedent. Decedent devised "house and lot known as 1545, 1547 and 1549 Von Storch Avenue, Scranton, Pennsylvania" to one of the respondents, Peter Kusang, who conveyed the premises to the other respondent, Anna Batyko, his sister, and Michael Batyko, her husband.

Respondents filed preliminary objections and seek dismissal of the petition, principally because, they con-

tend, the court has no jurisdiction. They agree it appears that petitioner is proceeding under the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 34 (a), which reads as follows:

"Section 34. (a) Whenever, by any last will and testament, any dwelling-house or other building is devised to any person or persons, without defining the boundaries of the curtilage or lot appurtenant to such building and necessary for the use and enjoyment of the same, it shall be lawful for any of the parties interested to apply, by petition to the orphans' court of the county in which such building is situate, for the appointment of commissioners to designate the boundaries of the curtilage or lot appurtenant to such building and necessary for the convenient use of the same for the purposes for which it was intended."

On hearing, it was stipulated of record that decedent acquired title to lots nos. 9 and 8, in square or block no. 13 upon the Plot of Sanderson's Addition to the City of Scranton between 1903 and 1905; that the house and lot no. 9 are known as 1551-1553-1555 Von Storch Avenue; that the house and adjacent lot no. 8 are known as 1545-1547-1549 Von Storch Avenue; that the house on lot no. 9 does extend beyond the boundaries of lot no. 9 over to lot no. 8 about three and one-fourth inches at the northwesterly corner; that the sidewalk or passageway between lots nos. 8 and 9 is entirely upon lot no. 8, except in front, where it veers to lot no. 9; that the front steps leading to the sidewalk on Von Storch Avenue are situate upon both lots nos. 8 and 9, and the survey correctly reflects the location of the fence line as being entirely on lot no. 8.

It is the use of the sidewalk or passageway which gives rise to the issue before the court. Anna Batyko, one of the respondents, claims ownership of it. Decedent built two multiple residence dwellings. She lived at 1549 Von Storch Avenue and rented the remainder

of the premises which she owned and maintained. She constructed the sidewalk in question, which extended between the dwellings from front to rear. While the front steps are located upon both lots nos. 8 and 9, the larger section is on lot no. 9. It was also stipulated that on the northerly side of the house on lot no. 9 there is a passageway indicated on the survey, being a brick walk less than two feet wide extending from the rear part of the house along the side wall to the front on Von Storch Avenue.

Decedent constructed and maintained during her lifetime a Y-shaped fence which extended from the northwesterly, or rear, corner of the multiple residence dwelling designated as 1545-1547-1549 Von Storch Avenue, and from the southwesterly, or rear, corner of the multiple residence dwelling designated as 1551-1553-1555 Von Storch Avenue. The stem or base line of the Y-shaped fence extended in an irregular manner from the rear of the subject lots to the apex of the fence lines, which, in turn, extended from the northwesterly corner and the southwesterly corners, respectively, of 1549 and 1551 Von Storch Avenue. The Y-shaped fence, together with the northerly side of the dwelling designated as 1549 Von Storch Avenue and the southerly side of the dwelling designated as 1551 Von Storch Avenue served to separate the unimproved land area into three distinct areas. An area to the rear of 1545-1547-1549 Von Storch Avenue was completely enclosed. An area to the rear of 1551-1553-1555 Von Storch Avenue, upon part of which the single residence dwelling was constructed, was completely enclosed. A pentagonal area, extending from Von Storch Avenue, between the multiple residence dwellings, and including part of the land in the rear, was enclosed on four sides, with the base or Von Storch side unenclosed. The sidewalk in question is located within this pentagonal shaped area. Access from the pentagonal shaped area

to both enclosed areas in the rear was permitted through gates.

During decedent's lifetime, the sidewalk between the multiple residence dwellings was used in common by occupants of both multiple residence dwellings and the occupants also of the single residence dwelling in the rear of 1551-1553-1555 Von Storch Avenue. This sidewalk was described as affording the only means of access to the single residence dwelling for the purpose of moving furniture. This sidewalk was also used for taking out garbage, ashes and refuse. The pathway or sidewalk on the northerly side of 1555 Von Storch Avenue was described as being barely wide enough to permit a person to walk in or out, not wide enough to allow furniture or coal to be moved in through it. Mrs. Batyko, one of the respondents, admitted that her mother, Mary Kusang, allowed tenants of 1551 Von Storch Avenue and tenants of the single residence dwelling in the rear to use the sidewalk between the multiple residence dwellings.

The survey indicates that the building designated 1551-1553-1555 Von Storch Avenue extends on its southwesterly corner beyond lot no. 9 into lot no. 8. This also shows an enclosed area to the rear of the multiple area known as 1551, 1553 and 1555 Von Storch Avenue extending upon lot no. 8. Decedent dedicated this rear enclosed area to the use and enjoyment of these premises aforementioned.

The pentagonal area which extended between the multiple residence dwellings and included a part of the rear thereof, per location of fence lines, was dedicated by decedent for the common use and enjoyment of the occupants of both multiple residence dwellings and the single residence dwelling in the rear.

In Carroll's Estate, 25 Lack. Jur. 45, the court examined the will with reference to the actual state of the devised property and inferred testatrix' intention

from the use of it by herself during her lifetime and at the time of making her will.

In Rogers v. Smith, 4 Pa. 93, the court held that in the devise of a house in a will, the word "house" is synonymous with messuage and conveys all that comes within the curtilage. And in Logan v. Wiley, 357 Pa. 547, pp. 550, 551, the court said:

"The words: . . . 'the property known as the "Daune Building"' are not a clear and precise description of the real estate intended to be devised. No metes and bounds are given. Of necessity, resort must be had to extrinsic and collateral circumstances to identify and define the boundaries of the premises intended to be devised.

"An ambiguity in description may always be explained . . ."

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 34 (a), et seq., provides a procedure for the designation of the curtilage of a building devised. This answers the contention of respondents that the court is without jurisdiction. The other contention of respondents, that decedent did not fail to define the boundaries of her devises and that when she said "my house and lot known as 1545, 1547 and 1549 Von Storch Avenue," it was actually a devise of lot no. 9, block 13 on Sandererson's Addition to the City of Scranton, is also without merit. It is needless to repeat her words. She used the words "known as." She devised the premises as she herself knew them to be "known as." And as she knew them and used them, they enjoyed the common passageway in dispute.

Testatrix' intention is to be derived from all the surrounding circumstances, including the use to which the premises have been dedicated and all the incidents necessary to the full and traditional enjoyment of each portion of the property devised. We hold that the sidewalk or passageway in question is a part of the curti-

lage of the devise to petitioner and, by the same token, a part of the curtilage of the devise to Peter Kusang, being a piece of ground or area necessary for the convenient occupation of both owners, and this implies their use in common of the said sidewalk or passageway.

The preliminary objections filed in this proceeding are hereby dismissed, and petitioner's request to appoint commissioners to designate and describe by metes and bounds, with their courses and distances, the boundaries of the curtilage or lot appurtenant to premises known as 1545, 1547, 1549, 1551, 1553 and 1555 Von Storch Avenue is hereby granted. Separate order of appointment of commissioners to follow.